No. 103,493

In the Matter of BENJAMIN M. KIELER, *Respondent*.

(227 P.3d 961)

Opinion filed April 15, 2010.

*Kimberly L. Knoll*, deputy disciplinary administrator, argued the cause, and *Stanton A. Hazlett*, disciplinary administrator, was with her on the formal complaint for the petitioner.

*Benjamin M. Kieler*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Benjamin M. Kieler, of Kansas City, Kansas, an attorney admitted to the practice of law in Kansas in 1991.

On July 1, 2009, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent did not file an answer to the formal complaint. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on October 21, 2009, where the respondent was personally present. The hearing panel determined that respondent violated KRPC 1.3 (2009 Kan. Ct. R. Annot. 426) (diligence); 1.4(a) (2009 Kan. Ct. R. Annot. 443) (communication); 1.7 (2009 Kan. Ct. R. Annot. 472) (conflict of interest); and Kansas Supreme Court Rule 211(b) (2009 Kan. Ct. R. Annot. 321) (failure to file answer in disciplinary proceeding). Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"FINDINGS OF FACT

. . . .

"2. On April 10, 2006, Cathy W. Irby retained the Respondent to represent her regarding two car accidents in which she was involved. The first car accident occurred on December 9, 2004, the second car accident occurred on September 10, 2005. Both of the other drivers readily admitted fault and were, coincidentally, both insured by American Family Insurance. Ms. Irby was insured by State Farm Insurance.

"3.    After Ms. Irby retained the Respondent, the Respondent failed to properly communicate with Ms. Irby regarding the status of the cases. Additionally, the Respondent failed to take appropriate action to advance her causes.

"4.    On·June 29, 2006, Lazell Williams of American Family Insurance wrote to the Respondent and requested that he provide information regarding Ms. Irby's condition. The Respondent failed to offer any evidence that he responded to this letter.

"5.    On July 26, 2006, Pat Mann of American Family Insurance wrote to the Respondent and requested that he provide medical bills and records regarding Ms. Irby. The Respondent did not respond to Ms. Mann's letter nor did he provide the requested records to American Family Insurance.

"6.    On September 29, 2006, Ms. Mann again wrote to the Respondent regarding Ms. Irby's case. Ms. Mann questioned whether the Respondent continued to represent Ms. Irby. Again, the Respondent did not respond in writing to Ms. Mann's letter and he failed to introduce any evidence of his response, if any occurred.

"7.    On December 9, 2006, the statute of limitations regarding Ms. Irby's first car accident expired. The Respondent failed to preserve Ms. Irby's claim by filing suit in her behalf prior to the running of the statute of limitations.

"8.    On December 20, 2006, Ms. Mann again wrote to the Respondent requesting records. The Respondent made no response.

"9.    Apparently, in March, 2007, Ms. Mann called and left a message at the Respondent's law firm. In response, the Respondent's partner at the time, Donald M. McLean wrote to Ms. Mann. In his response, Mr. McLean acknowledged the running of the statute of limitations regarding Ms. Irby's claim related to her December 9, 2004, car accident.

"10.    At some point in approximately March, 2007, Ms. Irby spoke by telephone with the Respondent. The Respondent acknowledged to Ms. Irby that he failed to file suit within the statute of limitations and her action regarding the December 9, 2004, car accident was barred by the statute of limitations. The Respondent told Ms. Irby that the only way she could receive any compensation for her injuries sustained in that accident was to sue him for malpractice. He told her that it was 'not a big deal,' that he has insurance, and that is why he has insurance. The Respondent was insured by The Bar Plan.

"11.    The Respondent advised Ms. Irby to hire an attorney to represent her in the malpractice action. The Respondent suggested two lawyers that Ms. Irby could hire to represent her in the action against him. Ms. Irby did not feel comfortable retaining either of the attorneys suggested by the Respondent. Unfortunately, Ms. Irby did not hire an attorney to represent her in the malpractice claim against the Respondent.

"12.    On April 2, 2007, Jayme Brown of State Farm Insurance wrote to Ms. Irby and notified her that the inter-company arbitration filed against American Family Insurance was completed. Ms. Brown informed Ms. Irby that the arbitra-

tion panel made no recovery to either party. Ms. Brown informed Ms. Irby that she was free, however, to pursue her claim independently.

"13. "On June 7, 2007, Allison J. Price of The Bar Plan wrote to Ms. Irby regarding her malpractice claim against the Respondent. Ms. Price informed Ms. Irby that she had requested that the Respondent provide her with certain information. The Respondent failed to timely provide the information that Ms. Price requested.

"14. On June 26, 2007, Ms. Irby spoke by telephone with the Respondent. Ms. Irby terminated the Respondent's representation and directed him to prepare her files so that she could pick them up. The Respondent prepared Ms. Irby's file and wrote her a letter. In the letter, the Respondent stated, 'I want to remind you that I have not taken any action on your second claim since the denial of the first claim was received.' Ms. Irby's first claim was not denied, it was withdrawn by the Respondent's firm due to the expiration of the statute of limitations due to the Respondent's negligence.

"15. After Ms. Irby fired the Respondent, she attempted to hire an attorney to represent her regarding the second car accident but for reasons not completely known, failed to do so. On September 10, 2007, the statute of limitations regarding Ms. Irby's second car accident expired. No suit was filed in behalf of Ms. Irby regarding the second car accident.

"16. On January 31, 2008, Ms. Irby filed a complaint with the Disciplinary Administrator's office. Marty Jackson, attorney, was appointed to investigate the matter.

"17. On February 25, 2008, the Respondent provided a written response to Ms. Irby's complaint. In his response, the Respondent admitted that he failed to file the first of Ms. Irby's two car accident claims within the statute of limitations. The Respondent failed to acknowledge, however, that he failed to take appropriate action on Ms. Irby's second car accident claim during the 14 months that he represented Ms. Irby.

## "CONCLUSIONS OF LAW

"1. At the hearing on this matter, the Respondent stipulated that he violated Kan. Sup. Ct. R. 211(b) by failing to file an Answer to the Formal Complaint filed by the Disciplinary Administrator's office. The Respondent, however, denied that he violated KRPC 1.3 and KRPC 1.4, as alleged in the Formal Complaint. Additionally, the Respondent denied that he violated KRPC 1.7, as discussed during the hearing.

"2. It is appropriate to consider violations not specifically included in the Formal Complaint under certain circumstances. The law in this regard was thoroughly examined in *State v. Caenen*, 235 Kan. 451, 681 P.2d 639 (1984), as follows:

'Supreme Court Rule 211(b) (232 Kan. clxvi), requires the formal complaint in a disciplinary proceeding to be sufficiently clear and specific to inform the respondent of the alleged misconduct.

'The seminal decision regarding the applicability of the due process clause to lawyer disciplinary proceedings is found in *In re Ruffalo,* 390 U.S. 544, 88 S. Ct. 1222, 20 L. Ed. 2d 117, *reh. denied* 391 U.S. 961, 88 S. Ct. 1833, 20 L. Ed. 2d 874 (1968). There the United States Supreme Court held that a lawyer charged with misconduct in lawyer disciplinary proceedings is entitled to procedural due process, and that due process includes fair notice of the charges sufficient to inform and provide a meaningful opportunity for explanation and defense.

'Decisions subsequent to *Ruffalo* have refined the concept of due process as it applies to lawyer disciplinary hearings, and suggest that the notice to be provided be more in the nature of that provided in civil cases. The weight of authority appears to be that, unlike due process provided in criminal actions, there are no stringent or technical requirements in setting forth allegations or descriptions of alleged offenses. . . . Due process requires only that the charges must be sufficiently clear and specific to inform the attorney of the misconduct charged, but the state is not required to plead specific rules, since it is the factual allegations against which the attorney must defend. . . . However, if specific rules are pled, the state is thereafter limited to such specific offenses. . . .

'Subsequent to the *Ruffalo* decision, the due process requirements in lawyer disciplinary proceedings have been given exhaustive treatment by this court. In *State v. Turner,* 217 Kan. 574, 538 P.2d 966 (1975), 87 A.L.R.3d 337, the court summarized prior Kansas and federal precedent on the question, including *Ruffalo,* and held in accordance with established precedent that the state need not set forth in its complaint the specific disciplinary rules allegedly violated . . ., nor is it required to plead specific allegations of misconduct. . . . What is required was simply stated therein:

" 'We must conclude that where the facts in connection with the charge are clearly set out in the complaint a respondent is put on notice as to what ethical violations may arise therefrom. . . .

. . . .

" 'It is not incumbent on the board to notify the respondent of charges of *specific acts of misconduct as long as proper notice is given of the basic factual situation out of which the charges might result.'* " 235 Kan. at 458-59.

Thus, only when the Formal Complaint alleges facts that would support findings of violations of additional rules, will considering additional violations be allowed. In this case, the Formal Complaint details that the Respondent failed to preserve Ms. Irby's claim by filing suit regarding [the] first car accident. The Formal Complaint also details that the Respondent instructed Ms. Irby to make a claim with his malpractice carrier regarding his conduct. The Hearing Panel concludes, therefore, that the Formal Complaint contains sufficient facts to support a finding that the Respondent violated KRPC 1.7. Thus, in the opinion of the Hearing Panel, the additional violation of KRPC 1.7 should be considered.

"3. After careful consideration of the complete record, the Hearing Panel concludes that the Respondent violated KRPC 1.3, KRPC 1.4, KRPC 1.7, and Kan. Sup. Ct. R. 211(b), as detailed below.

"4. Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. The Respondent failed to diligently and promptly represent his client in this case. The Respondent failed to provide diligent representation to Ms. Irby. Because the Respondent failed to act with reasonable diligence and promptness in representing his client, the Hearing Panel concludes that the Respondent violated KRPC 1.3.

"5. KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' In this case, the Respondent violated KRPC 1.4(a) when he failed to keep Ms. Irby advised regarding the status of the representation. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.4(a).

"6. Concurrent conflicts of interests are fully defined in KRPC 1.7. That rule provides:

'(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

(1) the representation of one client will be directly adverse to another client;

(2) there is a substantial risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

'(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing.'

In this case, the Respondent violated KRPC 1.7 when he continued to represent Ms. Irby after her malpractice claim ripened, because the Respondent's representation of Ms. Irby was in conflict with his own interests. Though the Respondent admitted that Ms. Irby's malpractice claim against him created a conflict, he failed to cure the conflict by complying with KRPC 1.7(b). Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.7.

"7. The Kansas Supreme Court Rules require attorneys to file Answers to Formal Complaints. Kan. Sup. Ct. R. 211(b) provide[s] the requirements:

'The Respondent shall serve an answer upon the Disciplinary Administrator within twenty days after the service of the complaint unless such time is extended by the Disciplinary Administrator or the hearing panel.'

In this case, the Respondent violated Kan. Sup. Ct. R. 211(b) by failing to file a written Answer to the Formal Complaint and by failing to file a written Answer to the Supplement to the Formal Complaint. Accordingly, the Hearing Panel concludes that the Respondent violated Kan. Sup. Ct. R. 211(b).

## "AMERICAN BAR ASSOCIATION
## STANDARDS FOR IMPOSING LAWYER SANCTIONS

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated*. The Respondent violated his duty to his client to provide diligent representation, to provide adequate communication, and to avoid conflicts of interests. Additionally, the Respondent violated his duty to the legal profession to comply with the Supreme Court rules.

"*Mental State*. The Respondent negligently and knowingly violated his duties.

"*Injury*. As a result of the Respondent's misconduct, the Respondent caused actual injury to Ms. Irby and the legal profession.

"*Aggravating or Mitigating Factors*. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"*Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process*. The Respondent engaged in a bad faith obstruction of the disciplinary proceeding by intentionally failing to file an Answer to the Formal Complaint as required by court rule and as requested by the Disciplinary Administrator's office.

"*Refusal to Acknowledge Wrongful Nature of Conduct*. In his written response to the initial complaint, the Respondent refuses to acknowledge that he was dilatory regarding Ms. Irby's claim related to her second car accident. The Respondent had that case for 14 months. During that time, he took no action to advance her cause. A majority of the Hearing Panel concludes that the Respondent refused to acknowledge the wrongful nature of his conduct.

"*Vulnerability of Victim*. Ms. Irby was vulnerable to the Respondent's misconduct. Ms. Irby was not sophisticated in legal matters.

"*Substantial Experience in the Practice of Law*. The Kansas Supreme Court admitted the Respondent to the practice of law in the state of Kansas in 1991. Thus, the Respondent had been practicing law for a period of 15 years at the time the misconduct began. The Hearing Panel concludes that the Respondent had the benefit of substantial experience in the practice of law at the time the misconduct occurred. Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its

recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"*Absence of a Prior Disciplinary Record*. The Respondent has not previously been disciplined.

"*Absence of a Dishonest or Selfish Motive*. It does not appear that the Respondent's misconduct was motivated by dishonesty or selfishness.

"*Remorse*. A minority of the Hearing Panel concludes that the Respondent expressed genuine remorse for his conduct.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'4.43     Reprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client.

'6.22     Suspension is appropriate when a lawyer knowingly violates a court order or rule, and there is injury or potential injury to a client or a party, or interference or potential interference with a legal proceeding.

'6.23     Reprimand is generally appropriate when a lawyer negligently fails to comply with a court order or rule, and causes injury or potential injury to a client or other party, or causes interference or potential interference with a legal proceeding.

'7.2     Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.

'7.3     Reprimand is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.'

### "RECOMMENDATION

"The Disciplinary Administrator argued that the Hearing Panel should recommend that the Respondent be suspended if the Hearing Panel concludes that the Respondent engaged in the misconduct knowingly. The Disciplinary Administrator argued, alternatively, that the Hearing Panel should recommend that the Respondent be censured and the censure should be published, if the Hearing Panel concludes that the Respondent negligently engaged in the misconduct. The Respondent argued that the Hearing Panel should dismiss the case against him and recommend no discipline.

"Based upon the findings of fact, conclusions of law, and the Standards listed above, the Hearing Panel unanimously recommends that the Respondent be censured by the Kansas Supreme Court. The Hearing Panel further recommends that the censure be published in the Kansas Reports.

"As an aside, it appears as though after the Respondent provided Ms. Irby with her original file in June, 2007, he retained only a scanned copy rather than also a paper copy of Ms. Irby's files. Additionally, it appears as though the Respondent's records were lost due to a computer error, which may have been avoided if he

had properly backed up the computer files or kept a paper copy of those files. While this is not the basis for any ethical violations found by the Hearing Panel, it certainly reinforces the conclusion reached by the Hearing Panel pertaining to the Respondent's lack of diligence.

"Costs are assessed against the Respondent in an amount to be certified by the office of the Disciplinary Administrator.

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009); see Supreme Court Rule 211(f) (2009 Kan. Ct. R. Annot. 321). Clear and convincing evidence is " 'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable." ' " 288 Kan. at 505 (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]). The evidence before the hearing panel establishes the charged misconduct of the respondent by clear and convincing evidence and supports the panel's conclusions of law. We therefore adopt the panel's findings and conclusions.

With respect to the discipline to be imposed, the panel's recommendation that the respondent be censured and that the censure be published in the Kansas Reports is advisory only and shall not prevent the court from imposing a different discipline. Supreme Court Rule 212(f) (2009 Kan. Ct. R. Annot. 337).

During oral argument before this court, respondent persisted in minimizing the seriousness of his conduct and attempted to shift responsibility for his actions to Ms. Irby. Absent from respondent's demeanor at oral argument was an appreciation of the serious nature of the misconduct and the impact his actions had on his client. We also note that respondent's failure to file an answer to the Disciplinary Administrator's formal complaint demonstrates his indifference to our disciplinary procedures and is reflective of respondent's overall apathy and insensitivity to the harm caused to Ms. Irby and the legal profession.

## CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Benjamin M. Kieler be suspended for a period of 1 year from the practice of law in the state of Kansas, effective upon the date of filing of this opinion, in accordance with Supreme Court Rule 203(a)(2) (2009 Kan. Ct. R. Annot. 272).

IT IS FURTHER ORDERED that the respondent shall comply with Supreme Court Rule 218 (2009 Kan. Ct. R. Annot. 361), and in the event the respondent would seek reinstatement, he shall comply with Supreme Court Rule 219 (2009 Kan. Ct. R. Annot. 376) and the Disciplinary Administrator shall cause a hearing in accordance with Rule 219 to be held to determine the respondent's fitness for reinstatement.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.

DAVIS, C.J., not participating.

JOHN E. SANDERS, District Judge, assigned.